## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

COMPSYCH CORPORATION       :
    PLAINTIFF,            :
                                   : CIVIL ACTION NO. 3:12cv692(VLB)
                                   :
    v.                         : DECEMBER 13, 2012
                                   :
HEALTH CHAMPION LLC,       :
    DEFENDANT.          :

## MEMORANDUM OF DECISION DENYING DEFENDANT'S [DKT. #27] MOTION FOR PRELIMINARY INJUNCTION

The Plaintiff ComPsych Corporation ("ComPsych") brings claims of trademark infringement pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), violation of the Connecticut Unfair Trade Practices Act  Conn. Gen. Stat. §52-110b ("CUTPA"), and common law unfair competition and trademark infringement against Defendant Health Champion LLC ("Champion").  ComPsych alleges that Champion infringed on its right, title and interest to the single-word service mark "HEALTHCHAMPION" that it has been using continuously since 2006.  Champion has brought counterclaims of trademark infringement pursuant to Section 43(a) of the Lanham Act, counterfeiting in violation of Section 32 of the Lanham Act, violation of CUTPA, and common law unfair competition and trademark infringement against ComPsych.  Champion alleges that ComPsych is infringing on its two-word registered mark "HEALTH CHAMPION."   Champion has moved for a preliminary injunction seeking to enjoin ComPsych from using the "HEALTHCHAMPION" mark or any mark confusingly similar to Champion's mark.

1

**Background**

ComPsych alleges that it is a leading provider of fully integrated employee assistance programs, behavioral programs, work-life support services, wellness programs, and outsourced human resource administrative services. [Dkt. #1, Compl., ¶9]. It provides services to more than 15,000 organizations covering more than 40 million individuals throughout the United States and over 100 countries. *Id.* ComPsych alleges that it has been using the "HEALTHCHAMPION" mark continuously since early 2006. *Id.* at ¶11.

In November 2006, ComPsych applied for federal registration of the "HEALTHCHAMPION" Mark with the United States Patent and Trademark Office ("PTO"). [Dkt. # 27, Ex. L]. On December 5, 2008, the PTO Examiner issued a final rejection of ComPsych's application. [Dkt. #27, Ex. M]. The Examiner stated that registration was refused because "the mark for which registration is sought so resembles the mark shown in U.S. Registration No.2080943 [CHAMPION HEALTH] as to be likely, when used on the identified services to cause confusion, or to cause mistake, or to deceive." *Id.* at 4. The Examiner further explained these "marks are similar because they are transpositions of reverse combinations of the same terms and convey the same meaning" and that "[c]onfusion is likely between two marks consisting of reverse combinations of the same elements if they convey the same meaning or created substantially similar commercial impression." *Id.* The Examiner also concluded that

respective services are related because the registrant Champion Health also provided health care information in the nature of chiropractic care services. *Id.* at 5.  In June 2009, ComPsych filed a notice of appeal with the Trademark Trial and Appeal Board ("TTAB").  [Dkt. #27, Ex. N].  ComPsych failed to file an appeal brief with the TTAB resulting in dismissal of the appeal in September 2009.  [Dkt.# 27, Ex. Q].

ComPsych asserts that despite the rejection of its application to register the mark and the reasons for the rejection, it uses the mark as follows: "Our HealthChampion program is designed to help employees effectively navigate their medical plan and benefits, guide them through health care options, connect them with the right resources and advocate for timely and fair resolution of issues.  ComPsych HealthChampion specialists partner with the employee to walk him or her through all aspects of their issue and, using a completely inhouse, integrated mode, ensure that the employee is fully supported with employee assistance program and/or work life services."  [Dkt. #36, Grenolds Decl., ¶6].

Champion contends that ComPsych first used the term "HEALTHCHAMPION" on its website in 2006 and then removed the term from its website in 2007. [Dkt. #27, p.4].   Champion further contends that the term did not reappear on ComPsych's website until sometime after July 29, 2011.  *Id.* Champion argues that ComPsych therefore abandoned use of the mark for over three years.  Champion points to archived screenshots from http://archive.org to support this contention which ComPsych contends is inadmissible hearsay.

However, ComPsych admits that it's "promotion of the HEALTHCHAMPION Mark on the internet was not continuous." [Dkt. #36, Grenolds Decl., ¶24]. ComPsych explains that to keep its web page from becoming cluttered it only displays a representative sample of its overall service offerings and several of its offerings, including some of which are federally registered, do not appear on the website but are active and offered to clients. *Id.* at ¶¶27-27.

ComPsych avers that it "has extensively promoted its HEALTHCHAMPION program via client presentation and client proposals" which prominently use the HEALTHCHAMPION mark. *Id.* at ¶¶9-10. These presentations and proposals "are multi-faceted promotional activities, and often involve the distribution of written overview sheets, customized slide show presentations, and verbal discussions." *Id.* at ¶10. ComPsych attests that these materials have been circulated to a wide range of ComPsych clients and prospects across multiple industries, in every region of the country." *Id.* at ¶11. ComPsych has presented to the Court representative samples of these materials which were distributed in each year from 2006 through 2012. *Id.* at ¶¶13-19. ComPsych represents that these materials were distributed to on average ten companies per year. Approximately sixty different companies received these materials which prominently displayed the "HEALTHCHAMPION" mark from 2006 through 2012. [Dkt.# 36, p.5-11].

Champion alleges that it "consists of a group of health care professionals that specialize in helping patients navigate the health care delivery system on behalf of individuals and families and empowers its clients to receive the best medical treatment available." [Dkt. #27, Mem., p. 2]. Champion's services include

personal health care concierge services, health care guidance and support, elder care services, Medicare assistance, help with choosing the right health insurance plan and understanding health insurance plans, claims assistance and appeals, and spending and reimbursement accounts. *Id.* Champion avers that it has been using the "HEALTH CHAMPION" mark in interstate commerce as its company name, logo and brand name since at least early 2008. *Id.* On November 10, 2010, Champion "applied for federal registration of the mark for services generally related to insurance issues, healthcare benefits, and case management services. *Id.* at 3. The mark was registered on November 29, 2011. *Id.* Champion points out that ComPsych did not contest or oppose its 2010 application.

### Legal Standard

Historically, a "party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info., Inc.,* 375 F.3d 190, 192 (2d Cir.2004) (internal quotation marks and citation omitted).

Contrastly, the Second Circuit held that in the context of copyright infringement actions the traditional standard for injunctive relief had been abrogated by the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006). *Salinger v. Colting*, 607 F.3d 68, 74-75 (2d Cir. 2010). The Second Circuit held that a preliminary injunction should issue where the plaintiff

has shown a likelihood of success on the merits and that (1) "he is likely to suffer irreparable injury in the absence of an injunction"; (2) "remedies at law, such as monetary damages, are inadequate to compensate for that injury"; (3) the balance of hardships tips in his favor; and (4) "the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 80 (citing *eBay*, 547 U.S. at 391).

The Second Circuit in *Salinger* "emphasize[d] that courts should be particularly cognizant of the difficulty of predicting the merits of a copyright claim at a preliminary injunction hearing." *Id.* The *Salinger* court also altered the irreparable harm inquiry. Formerly, "when a copyright plaintiff makes out a prima facie showing of infringement, irreparable harm may be presumed" *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996) (citations omitted). This same presumption also applied in trademark infringement actions. See *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("A plaintiff who establishes that an infringer's use of its trademark creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury" when seeking injunctive relief, a presumption that can be overcome if the party seeking the injunction has delayed in seeking the injunction); *New Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183, 185 (2d Cir. 2001) ("In Lanham Act cases such as this one, where the plaintiff has a protected mark, a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.") (internal quotation marks and citation omitted). In *Salinger*, the Second Circuit warned that courts "must not

adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm … The court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger*, 607 F.2d at 80.   Thus "courts must not simply presume irreparable harm ... [instead, a plaintiff must show that] the failure to issue a[ ] [preliminary] injunction would actually cause irreparable harm." *Id.* at 82 (citing *eBay,* 547 U.S. at 393).

While the Second Circuit, in *Salinger*, stated that its holding applied to "preliminary injunctions in the context of copyright cases" the court also observed that it saw "no reason that *eBay* would not apply with equal force to an injunction in *any* type of case." *Salinger*, 607 F.3d at 78 n. 7 (emphasis in original).   Although the Second Circuit "has not yet spoken on this issue in the context of trademark infringement actions, *Salinger* suggest that these cases should be analyzed under the standards for injunctive relief articulated by the Supreme Court in *eBay*." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515, 539-40 (S.D.N.Y. 2011).    "Prior to *Salinger*, there was a split among districts about the applicability of the *eBay* standard to trademark cases" but it appears most courts have applied *eBay*'s standard to trademark actions post *Salinger*.   *Id.* (collecting cases).   However this Court need not address whether the Second Circuit's opinion in *Salinger* extends to disputes outside the copyright context as Champion has failed to demonstrate a likelihood of success

on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the movant's favor to meet either standard as explained below.

<u>Analysis</u>

"[R]egistration of a federal mark confers upon the owner of the mark a presumption that the owner has the exclusive right to use the mark nationwide." *Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 266 (2d Cir. 2011) (citing 15 U.S.C. § 1115(a)).   "In order to prevail on a trademark infringement claim for registered trademarks, pursuant to 15 U.S.C. § 1114,  or unregistered trademarks, pursuant to 15 U.S.C. § 1125(a)(1),  a plaintiff must establish  that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale ... or advertising of goods or services,' 15 U.S.C. § 1114(1)(a), (5), without the plaintiff's consent."   *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005) (citations omitted).   "In addition, the plaintiff must show that defendant's use of that mark 'is likely to cause confusion ... as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff].'"   *Id.* (quoting 15 U.S.C. § 1125(a)(1)(A)).   The Plaintiff, or in this case the counterclaim Plaintiff Champion, must show priority of right over ComPsych in order to be entitled to relief as  "United States trademark rights are acquired by, and dependent upon, priority of use." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2d Cir. 2007).

Champion argues that after 2006 ComPsych abandoned its use of the mark and cannot now revive its rights to the mark.  Champion further argues that there is prima facie evidence of abandonment under the Lanham Act because ComPsych failed to use the mark for over three consecutive years resulting in a rebuttable presumption of abandonment.  ComPsych contends it never abandoned its use of the mark without intent to resume use as demonstrated by its distribution of client presentations and proposals which prominently featured the mark from 2006 through 2012.  ComPsych implies that Champion abandoned the mark because Campion failed to protect the mark by objecting to its application to register the mark.  Finally, ComPsych argues that it has priority rights to the mark through its prior continuous use.

In the typical abandonment scenario, the owner of a mark registered with the PTO will bring a civil action against a person alleged to have used the mark without the owner's consent under section 32(1)(a) of the Lanham Act.  *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 145-46 (2d Cir. 2007) (citing 15 U.S.C. § 1114(1)(a)).  In such a scenario "[e]ven if a plaintiff makes the showing required by federal … the alleged infringer may nevertheless prevail if it can establish the owner's prior abandonment of the mark."  *Id.* (citing 15 U.S.C. § 1115(b)(2)).[1]   "Indeed,

---

[1] The Court also notes that "[u]nder the Lanham Act, district courts are authorized to cancel registrations, but only '[i]n any action involving a registered mark.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 98 (2d Cir. 2011) (quoting 15 U.S.C. § 1119).  Section 1119 provides "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.  Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby."  15 U.S.C. §1119.

abandonment is not only an affirmative defense to an infringement action; it is a ground for cancelling a federally registered mark." *Id.* (citing 15 U.S.C. § 1064(3)). The present case departs from the typical scenario in that the owner of the registered mark, Champion, is defending the validity of its mark by claiming that the infringer, ComPsych, abandoned its prior use of the mark which would have given it priority rights to the use of the mark over Champion.    In order to determine whether Champion has demonstrated a likelihood of success on the merits, the Court must examine whether ComPsych has abandoned its use of the mark.  If ComPsych did not abandon the mark, then it would possess a priority right to use the mark over Champion and there would be grounds to cancel Champion's registered mark.  There would therefore be no likelihood of success on the merits or sufficiently serious questions going to the merits if ComPsych had never abandoned its use of the mark.

"The abandonment doctrine derives from the well-established principle that trademark rights are acquired and maintained through use of a particular mark." *ITC,* 482 F.3d at 146.  "'There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed.'" *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 581 (2d Cir.1990) (quoting *United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 97, (1918)).  "This is true even of marks that have been registered with the Patent and Trademark Office." *ITC,* 482 F.3d at 146 (citing *Basile, S.p.A. v. Basile,* 899 F.2d 35, 37 n. 1 (D.C.Cir.1990) ("Although [a mark's] registration is a predicate to its protection under [section 32(1)(a) of] the Lanham Act, the underlying right

depends not on registration but rather on use.")).   "Indeed, one of the fundamental premises underlying the registration provisions in the Lanham Act is that trademark rights flow from priority and that priority is acquired through use." *Id. See, e.g.,* 15 U.S.C. § 1057(c) (stating that registration of mark "shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect ... against any other person except for a person whose mark has not been abandoned and who, prior to such filing[,] ... has used the mark").  "Thus, so long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market."  *ITC,* 482 F.3d at 147 (internal quotation marks and citation omitted).

"If, however, an owner ceases to use a mark without an intent to resume use in the reasonably foreseeable future, the mark is said to have been 'abandoned.'" *Id.*; *see* 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 17:5, at 17–8 (4th ed.2002) (observing that "abandonment" refers to situations involving the "non-use of a mark, coupled with an express or implied intention to abandon or not to resume use").   "Once abandoned, a mark returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace, in accordance with the basic rules of trademark priority." *ITC,* 482 F.3d at 147 (citations omitted).

"The party asserting abandonment bears the burden of persuasion with respect to two facts: (1) non-use of the mark by the legal owner, and (2) lack of intent by that owner to resume use of the mark in the reasonably foreseeable

future." *Id.* "'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." *MAK Marketing, Inc. v. Kalapos*, 620 F.Supp. 2d 295, 304 (D. Conn. 2009). "The Lanham Act expressly states that '[n]onuse' of a mark 'for 3 consecutive years shall be prima facie evidence of abandonment.'" *ITC,* 482 F.3d at 147 (quoting  15 U.S.C. § 1127).  The Second Circuit has explained "that the term 'prima facie evidence" in this context means 'a rebuttable presumption of abandonment.'" *Id.* at 148 (quoting *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980)). The "statutory presumption of abandonment requires that one fact, i.e., abandonment, be inferred from another fact, i.e., non-use of the mark for three years or more. The significance of a presumption of abandonment is to shift the burden of production to the mark owner to come forward with evidence indicating that, despite three years of non-use, it intended to resume use of the mark within a reasonably foreseeable time." *Id.*

The Second Circuit has explained that "intent is always a subjective matter of inference." *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980).  "Thus, courts have generally held that a trademark owner cannot rebut a presumption of abandonment merely by asserting a subjective intent to resume use of the mark at some later date." *ITC,* 482 F.3d at 150.  "Rather, to rebut a presumption of abandonment … the mark owner must come forward with evidence with respect to ... what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred." *Id.* (internal quotation marks and citations omitted).  In addition, some courts have held that

abandonment or an intent to abandon can be found where a trademark owner fails "during a long period to assert or enforce its rights against descriptive use by others such that the mark no longer indicates origin in one seller."  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 17:17  (4th ed.1999); *see also  McKesson & Robbins, Inc. v. Charles H. Phillips Chemical Co.*, 53 F.2d 342, 345 (2d Cir. 1931), modified, 53 F.2d 1011 (2d Cir. 1931), cert. denied, 285 U.S. 552, 76 L. Ed. 942, 52 S. Ct. 407 (1932).

Here, Champion fails to satisfy its burden of persuasion to demonstrate that ComPsych ceased to use the "HEALTHCHAMPION" mark and did not intend to resume use of the mark.  Although ComPsych's right to continue to use the mark was subject to question in view of the PTO's ruling that "HEALTHCHAMPION" so resembled a prior registrant's mark as to likely cause confusion, ComPsych has submitted evidence that it did continue to use the mark in client presentations and proposals which prominently featured the mark consistently from 2006 through 2012.  These presentations were distributed to on average ten companies each year and approximately sixty different companies received the materials during this time period.  The only evidence that Champion has presented of non-use is the fact that the mark was removed from ComPsych's website after 2006.  However this fact is not conclusive evidence of non-use without intent to resume where ComPsych consistently used the mark in materials and presentations which it distributed to numerous companies beginning in 2006, despite the PTO's admonition.  Even the suggestion that ComPsych did not object to Champion's application to register its mark evinces

abandonment is unavailing as it was reasonable for ComPsych to assume that Champion's application would be rejected for the same reason its application to register its mark was rejected and thus there was no need to object.  Moreover, "an owner of a mark is not required to police every conceivably related use … in order to protect a definable area of primary importance."  *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 486 F. Supp. 414, 422-23 (S.D.N.Y. 1980). Consequently, Champion has failed to demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits based on its theory that ComPsych abandoned the mark.

In its reply brief, Champion raises three new arguments for the first time in support of its motion for preliminary injunction. First, Champion argues that ComPsych's use of the mark fails to establish priority because it failed to render any services under the mark in 2008 when Champion started using its mark. Second, Champion argues, in view of the fact that ComPsych failed to render any services, its analogous use of the mark would not be an alternative basis to establish priority because it was not sufficiently widespread.  Lastly, Champion contends that ComPsych's use of the mark was so minimal it could not constitute the kind of bona fide use intended to afford a basis for trademark protection. While these arguments are not replies to ComPsych's response,  the Court will address them in the interest of judicial efficiency.

The provision of services is not necessary to validate the use of a servicemak; instead, the owner of the mark need only use the mark to advertise services which actually exist and which it is actually offering for sale. "It is firmly

established that the right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace.  Thus, there can be no trademark absent goods sold and no service mark without services rendered." *American Express Co. v. Goetz*, 515 F.3d 156, 161 (2d Cir. 2008) (internal quotation marks and citations omitted).  "[I]t cannot be said that a service mark is actually used if it is displayed in an advertisement for services that are non-existent or will only hypothetically be available at some point in the future." *Id.* "The exclusive right to a distinctive trademark "belongs to the one who first uses it in connection with a particular line of business.  Pre-sale analogous use of the mark, such as publicity in advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications, or the placement of a sign ... on the construction site may be adequate to establish prior use in commerce." *Housing & Serv., Inc. v. Minton*, No.97CIV2725(SHS), 1997 WL 349949, at *3 (S.D.N.Y. June 24, 1997) (internal quotation marks and citation marks omitted). "Such analogous use of a mark has consistently been held sufficient ... to establish priority rights as against subsequent users of the same or similar marks, as long as the use is open and notorious or is of such a nature and extent that the [mark] has become popularized in the public mind." *Id.* (internal quotation marks and citations omitted).  "The 'talismanic' test is whether the mark was used 'in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.'" *Id.* (quoting *Windows User, Inc. v. Reed Business Pub. Ltd.*, 795 F.Supp. 103, 108 (S.D.N.Y. 1992)).

Use of the mark must penetrate a significant portion of the relevant market. "It is clear that the test … is directed at the actual perception of the potential consumers of the service, not some hypothetical person or the intent of the marketer… it is actual public perception that is required." *T.A.B. Sys. v. Pactel Teletrac*, 77 F.3d 1372, 1376 (Fed. Cir. 1996).  The Federal Circuit has explained that "purchaser perception must involve more than an insubstantial number of potential customers.  For example, if the potential market for a given service were 10,000 persons, then advertising shown to have reached only 20 or 30 people as a matter of law could not suffice.  However close the linkage between the mark and the future service, analogous use could not be shown on such facts because the actual number of potential customers reached, not the strength of the linkage for some reasonable potential customer, is the focal point of the analogous use inquiry." *Id.*  *"*[I]t simply requires more than a negligible portion of the relevant market.  In other words, advertising of sufficient clarity and repetition to create the required identification must have reached a substantial portion of the public that might be expected to purchase the service.  Thus, the user must prove that the necessary association was created among more than an insubstantial number of potential customers. Otherwise, he cannot show significant impact on the purchasing public." *Id.* (internal quotation marks omitted).

Champion's only support for its contention that ComPsych failed to render any services under the mark is based on the fact that the evidence that ComPsych submitted in its opposition brief as to abandonment did not indicate that it actually sold its HealthChampion service in 2008 or after.   In the absence

of any affirmative evidence that ComPsych failed to sell its HealthChampion service, this Court cannot credit Champion's contention.  The Court is mindful that "a preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990).  "Motions for preliminary injunctions are 'frequently denied if the affidavits [in support of the motion] are too vague or conclusory to demonstrate a clear right to relief under Rule 65.'"  *Shenk v. Social Sec. Admin.*, No.12-cv-4370(SLT), 2012 WL 5196783, at *8 (E.D.N.Y. Oct. 19, 2012) (quoting 11A C.Wright & A. Miller, *Fed. Practice & Proc,* § 2949 (2004)).  Champion's bald contention that ComPsych did not render any services under the mark during this time period is insufficient to demonstrate a clear right to the extraordinary relief it is seeking.  Moreover, ComPsych, in its sur-reply brief, has submitted a contract for its HEALTHCHAMPION service dated October 20, 2006, which was effective for a five year period as representative evidence of services rendered.  [Dkt. #36, Grenolds Decl., ¶5].  In order to obtain such extraordinary relief, Champion has to do more than simply assert that its conclusory belief is substantiated by ComPsych's failure to produce sufficient evidence contradicting that belief.  This line of argument is better reserved and more appropriate for summary judgment after discovery has been completed and where the non-movant has the burden to demonstrate a genuine dispute of material fact.

Champion further fails to demonstrate the insufficiency of ComPsych's advertising at this stage of the litigation.  Champion mischaracterizes ComPsych's evidence to argue that ComPsych only distributed proposals to 18

or 19 potential purchasers out of thousands.  However, ComPsych has indicated that from 2006 through 2012 it made presentations to approximately sixty different companies.  Neither party provides evidence as to the size of the relevant market for ComPsych's HealthChampion service.  Although ComPsych does admit that it provides services to more than 15,000 organizations, it is not clear what percentage of those 15,000 organizations would be in the market for its HealthChampion service particularly considering the diverse array of services that ComPsych markets and provides.  Without further factual development, this Court cannot conclude on the basis of the evidence before it that ComPsych's advertising reached an insubstantial number of potential customers or merely a negligible portion of the relevant market.  Consequently, Champion's argument that ComPsych's advertising and marketing did not constitute analogous use sufficient to establish priority is unpersuasive at this stage of the litigation and it has therefore failed to establish a likelihood of success on the merits on this theory.

Lastly, Champion argues that the sales of ComPsych's service cannot afford a basis for trademark protection because they are de-minimis.  The Second Circuit has explained that "[t]o prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory."  *LaSociete Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271-72 (2d Cir. 1974).  There must be "a trade in the goods sold under the mark or at least an active and public attempt to establish such a trade.  Absent these elements, no trademark can be created or

exist." *Id.* at 1274.  The Second Circuit explained that trademark rights could be upheld "in spite of model sales programs" where the limited trademark usage "was part of an ongoing program to exploit the mark commercially."  *Id.* at 1271-72. In contrast, "where no present intent has been found to market the trademarked product, minimal sales have been held insufficient to establish trademark rights."  *Id.*  Even if ComPsych's marketing of its HealthChampion service was less than substantial and resulted in modest sales, Champion has failed to demonstrate that such marketing was not part of an ongoing program to exploit the mark commercially or that ComPsych did not have intent to market its service in view of the fact that ComPsych consistently distributed its marketing materials to various companies each year since 2006 and even after its application for registration has been denied by the PTO.  At this preliminary stage in the litigation, Champion has failed to demonstrate that ComPsych's use of the mark was not deliberate and continuous but sporadic, causal or transitory. Again, Champion has failed to satisfy its burden to demonstrate a likelihood of success on the merits on its theory that ComPsych's de-minimis commercial use of the mark was insufficient to create rights of priority to the mark over Champion.

At this preliminary stage the record is far too replete with factual issues as to the nature and extent of ComPsych's prior use of the mark for this Court to determine if either party has a likelihood of success on the merits.  The Court is disinclined to issue "an extraordinary remedy that should not be granted as a routine matter" where there are so many unresolved questions of fact and where

the movant has failed to proffer any substantial affirmative evidence in support of its position.  *JSG Trading*, 917 F.2d at 80.  Champion has only proffered those archived screenshots of ComPsych's website and its argument that ComPsych's evidence submitted in opposition is deficient in support of its request for injunctive relief.

It is clear that Champion has failed to demonstrate a likelihood of success on the merits.  However considering the unresolved questions of fact as to ComPsych's de minimis or analogous use, there are sufficiently serious questions going to the merits to make them a fair ground for litigation under the earlier standard for injunctions.  However, Champion has failed to demonstrate that the balance of hardships tips decidedly in its favor to be entitled to injunctive relief under that standard.  It appears that both Champion and ComPsych have endured hardships from each other's use of a nearly identical mark for similar services.  However, there is no evidence that Champion is enduring more severe hardships than ComPsych.  Champion asserts an entirely circular argument as to the balance of hardships.   It argues that ComPsych will suffer no hardship because it does not own any rights to the mark and therefore could not suffer any hardship in being enjoined from use of a mark in which it has no rights.    As discussed above, there are significant questions of fact that preclude this Court from finding that Champion has demonstrated a likelihood of success on its claim that ComPsych holds no rights to the mark.  If the Court were to conclude that ComPsych does have a priority of right to the mark, then it would undeniably suffer hardship.  Consequently, the balance of hardships does not tip decidedly

in either direction.   In sum, Champion has failed to satisfy its burden under either the traditional preliminary injunction standard or the more recent *Salinger* standard to warrant injunctive relief.

Notably, although this Court has concluded that Champion has failed to demonstrate a likelihood of success in light of preliminary evidence that ComPsych has been continuously using the mark before Champion, ComPsych would not be entitled to preliminary injunctive relief in light of Champion's registration of the mark and the attendant presumption that the registered owner of the mark has the exclusive right to use the mark nationwide. *Patsy's Italian Restaurant*, 658 F.3d 254 at 266.   The issues presented by this case involve a fact intensive inquiry which must be borne out by discovery and therefore preclude this Court from finding that preliminary injunctive relief is appropriate for either party.   Accordingly, neither party is able to make the requisite showing of entitlement to injunctive relief on the record before the court.

<u>Conclusion</u>

Based upon the above reasoning, Champion's [Dkt. #27] motion for preliminary injunction is DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

**Dated at Hartford, Connecticut: December 13, 2012**